## SMITH *versus* DAVENPORT.

If one part of a commercial contract, upon a literal construction, be found at variance with another part, the part which contributes more essentially to the contract and becomes the more material, will be entitled to more consideration than the part which is less so.

Where a cargo is shipped to a foreign country, without naming any particular port or place of delivery in that country, it is fair to conclude that the port of *general* delivery of *such* cargoes in that country, was the place intended in making the shipment.

When goods on shipboard are consigned to the captain for sale, his power to sell at the port of destination is not revoked by a sale made while the goods are at sea, and of which he had received no notice. The purchaser, in such case, adopts the captain as *his* consignee, until he appoints some one else to act for him.

If the goods thus sold while at sea, were by the contract of sale to be delivered to the purchaser on their arrival, and he have no one there to receive them, the captain, when unlading them, is to be deemed the agent of the seller in delivering, and of the purchaser in receiving them.

COVENANT BROKEN.

The plaintiff was owner of one eighth of the barque Arco Iris, and of her cargo. Among other things the cargo consisted of a quantity of boards. The barque sailed from Maine about August 1, 1849, under command of Captain Coburn, a part owner, bound to California, with general authority to dispose of the vessel and cargo according to his discretion. He touched at Monte Video, where, in October, 1849, he took in passengers, sold a small part of the boards, and used a few, not exceeding five hundred feet, in erecting some new berths, &c.

On the 5th of January, 1850, the barque having then been about five months on her way, the following contract was made by these parties, under their seals, viz : —

" Whereas the said Smith is owner of one eighth of a part of a cargo of boards amounting to one hundred and eleven thousand two hundred and eighty feet, more or less, shipped from Gardiner on board the barque Arco Iris, and now supposed to be on the way between Monte Video and California, it is agreed between the parties that the said Smith hereby sells and transfers to the said Davenport all his right, title and interest in the said boards at the rate of two hundred dollars per thousand feet, for what are delivered in California, to be paid in six months from the date of the arrival of the lumber at California at the port of discharge. The said Smith is to deliver the said lumber alongside at a reasonable time after its arrival. The said Davenport has the privilege

of appointing an agent to receive and sell the said lumber, and is to pay all expenses incident thereto, and is to give his note in payment of said lumber as soon as its arrival and delivery can be ascertained.

" And in case the lumber, from any cause, should not arrive, then this agreement to be null and void."

The barque arrived at San Francisco in California in February, 1850. No person appeared there to take any delivery or charge for the defendant. The boards were disposed of by commission merchants, by direction of the captain. There were no wharves at San Francisco, and vessels were unloaded half a mile from the shore, at great expense, by the aid of lighters.

On May 29, 1850, Capt. Coburn addressed a letter to the plaintiff from San Francisco, stating the quantity of boards, landed at California, to be 89,421 feet. This letter also names the prices, expenses and commissions of the sale, and was placed in the defendant's hands several weeks prior to the commencement of the suit, which was on April 29, 1851. The captain in his testimony states that, at the time of testifying, he had rendered an account of sales of a part only.

On July 16, 1850, the plaintiff apprised the defendant in writing, that the vessel arrived at California on February 19, 1850, and that his one eighth of the lumber landed there, was 11,177 feet, for which he claimed the defendant's note at $200 per thousand, amounting to $2335,40, payable at six months from the time of said arrival.

On the 29th of the same July, the plaintiff apprised the defendant in writing, that his proportion of the avails of the California sales was $375,10, which was deposited, subject to his order, in the hands of H. T. one of the joint owners.

This action was brought upon the contract between the parties. The defendant pleaded the general issue, *non est factum*, with brief statement; 1st, that he has not broken but has kept and performed his covenants; 2d, that the plaintiff, at the time of making the contract, was not the owner of one eighth of said cargo of boards, although in and by

the contract, he engaged that he was such owner; 3d, that one eighth of the boards never arrived at California, in a condition to be there delivered to the defendant, nor did the plaintiff ever deliver the same or any part thereof, to him or to his agent there ; 4th, that the time of the arrival of the boards, for which the plaintiff claims, " was never ascertained and made known by the plaintiff to the defendant nor by said plaintiff and defendant before the commencement of this suit," according to the meaning of the contract.

The case was submitted to the Court for its adjudication, with power to draw inferences as a jury might do.

*H. W. Paine*, for the plaintiff.

*Emmons*, for the defendant, offered an argument of much length and research.

The following epitome cannot adequately present it, and yet it is all for which room can be here allowed. —

By the contract in suit, Smith guarantees to the defendant, that he was *then* the owner of one eighth of a part of a cargo of boards, the exact quantity unknown, but supposed by Smith to be 111,280 feet, on board the barque, and supposed to be on the way between Monte Video and California ; and he sells to Davenport all his right and interest in the one eighth of a part of such cargo of boards, and binds himself to deliver the same in California, to Davenport's agent, appointed to receive the same ; with a proviso, that, if said one eighth of a part of said cargo of boards should fail of arrival at California, the contract was to be void.

The obligations of the contract were mutual and dependent. In such cases, the one party can claim performance of the other, only upon his own performance of his part of the obligation. 2 Poth. App'x, 43 ; 4 T. R. 671 ; 7 T. R. 125 ; 8 T. R. 366 ; Chipman on Con. 47. This principle appears to be conceded by the plaintiff ; for he has deemed it necessary to allege, that the boards which he sold to the defendant arrived at California, and that the time of the arrival was ascertained on July 16, 1850. The *onus* is then upon the plaintiff to prove performance of his part of the contract.

1. The plaintiff warranted his *then* ownership of one eighth of *that* cargo of boards which had been shipped at Gardiner on board the barque. The contract being under seal, he is estopped to deny such ownership. Smith's Law of Contract, Law Lib. April No. of 1847, p. 23, note c. ; *Carpenter* v. *Butler*, 8 M. & W. 200 ; Co. Litt. 352, b. He must, therefore, prove that ownership. It was upon the faith of that warranty, that the defendant purchased. The plaintiff undertook to deliver to the defendant at California the full one eighth of said cargo of boards. He cannot, therefore, be permitted to allege that his ownership was, *at the time of the contract,* less than the one eighth of the cargo as it was, when shipped from Gardiner, or that the delivery of a less quantity than that, is a performance on his part.

But the facts proved are that, *before the time of making the contract,* a part of the boards had been sold, and a part used by the captain, at Monte Video.

By the failure to deliver that full one eighth of the original cargo of boards, the contract, according to its express terms, became void ; nor will this effect be avoided by the words that the defendant should pay " for what are delivered in California." For, " in all contracts, he that speaks obscurely or ambiguously, speaks at his own peril," " and such expressions are to be taken most strongly against him." Noy's Max. 148.

The expression, *"for what are delivered in California,"* manifestly refers only to the words, " *more or less,*" in the contract. As it was unknown from the first, what was the quantity on board, it was to be ascertained on the delivery. Otherwise, the plaintiff might have retained any part, which his interest or caprice might dictate, and the defendant's purchase thereby become fruitless.

Neither can it be maintained that the defendant was merely to take the plaintiff's place in relation to the cargo ; because, 1st, The contract shows that the plaintiff was but a tenant in common, and yet, by the effect of the contract, he stipulated for the delivery of a *divided* eighth. It was to the defendant

a valuable part of the contract, that he should receive his part in severalty; 2dly, because it is a rule that every part of an instrument shall, if possible, be made to take effect. Chit. on Con. 4th Ed. 69, 73; 9 Pick. 422; 10 Pick. 230; 13 Pick. 167. That the defendant's part of the boards were to be delivered in severalty, is apparent from the plaintiff's agreement " to deliver them alongside," and that defendant might appoint an agent " to receive and sell" them.

The contract was imperfect. It fixed California as the place for delivery of the boards. California had several ports. It could not be known at which one the delivery should be made. Unless that were known, the defendant could not have the benefit of appointing an agent. A further agreement therefore was necessary, without which the contact cannot be enforced.

But if, from the evidence and the circumstances, the Court might infer that San Francisco was the contemplated place for the delivery, the plaintiff is not relieved from difficulty. That city was without wharves or landing-place. Vessels were discharged half a mile from shore. The harbor was full of vessels. Where should the defendant's agent apply for the boards, to have them delivered *in a reasonable time*, as agreed? Was not something to be done, or some notice given by the plaintiff to secure to the defendant some availability in having an agent as stipulated? Was the agent to watch month after month, and explore every vessel till he should find the Arco Iris? The requisite acts on the part of the plaintiff in this respect, have not been proved, nor can be, for they were never performed.

Nothing has occurred in this case to exonerate the plaintiff from a full performance on his part. Before entitled to a suit upon the contract, he was to do every thing *that could be done* without the concurrence of the other party. Chit. on Con. 53; Chit. on Plead, 315, 3d Ed; 2 Salk. 623 ; 2 Poth. App. 44, No. 8; Yelverton, 87, Ed. by Metc. ; 1 Poth. part 3, art. 6, § 2, 360.

The plaintiff alleges the delivery of 11,177 feet. This was

short of the quantity stipulated for. The Captain testified that he sold some, and used some in October, at Monte Video, and his deposition, which is referred to, shows that he there sold over 15,000. This was *before* the sale to the defendant.

Thus the plaintiff never had in California the quantity of boards which he contracted to deliver there to the defendant's agent. It was, therefore, out of his power to perform as he had agreed. The contract was entire, and cannot be apportioned. 2 Poth. 45, App. 8, 46; 7 T. R. 381; 3 Wend. 112; Comyn's R. 117; 2 Penn. 63; Chit. on Con. 4th ed. 352; 2 Doug. 620; Cro. El. 272; Comyn's Dig. Pleader, c. 52; 2 Saund. 351; 2 Lev. 23; Willes 496; 6 T. R. 665; Yelv. 76.

The principle established by these and many other authorities, demonstrates that unless the plaintiff carried and delivered the *full quantity* of boards contracted for, he can recover nothing.

There was no *delivery* of *any* boards at California; there was no preparation to deliver any. Mere unloading was not delivery. Neither were the boards contracted for ever carried there.

Thus was there an entire failure of the plaintiff to perform his contract.

Has he then any excuse for non-performance? There surely is no excuse that he can *rely* upon, for he has *averred* none. In 1 Chit. on Plead. 309, it is laid down, "when an obligation on the defendant to perform his contract depends on any event, which would not otherwise appear from the declaration, it is obvious that an averment of such event is essential to a logical statement of the cause of action, and should precede the statement of the defendant's breach. Such averments in a special action of assumpsit usually are, of the performance or an *excuse for non-performance.* See Chip. on Con., Specif. Art. 41. A plaintiff, counting upon a dependent contract must aver performance on his part, or that he has done all in his power to a performance.

The plaintiff then, not having averred any excuse for non-performance, can rely *alone* upon proof of *actual and full*

*performance* on his part. But it has been already shown, that there was no such performance. The plaintiff was not at California to deliver the boards; he had no one there authorized or capable to do it; and the boards were never there. Hence it was unnecessary that the defendant should have had any agent there to receive them. The plaintiff can find no protection in the fact that, *prior* to his contract of sale to the defendant, the boards, the very subject matter of the sale, had been sold to another. It was for *him* and not for the *defendant* to foresee and guard against such a contingency. 2 Black. Com. 340; Co. Litt. 206, a; Broom's Max. (110, 111,) 90 p.; Noy's Max. 137, (31); 2 Co. Litt. 334.

The note of the defendant was, by the contract, to be given on the ascertainment of the day of the barque's arrival. Until after the bringing of the suit, that day had not been ascertained. The plaintiff relies solely upon his letter to the defendant stating the time. Could such a bare statement, by the plaintiff only, bind the defendant, when perhaps the barque had never arrived, but been lost at sea? And to this day the quantity of boards carried to California has never been ascertained. So says the Captain's testimony. His return of the amount was " of a part only." With no ascertainment of the time of the arrival, with no ascertainment of the quantity carried, with no notarial documents, with not even a survey bill, and when in fact the lumber contracted for had never arrived, how could the defendant be bound to give his note to so large an amount as that claimed in the plaintiff's letter; and especially when by the *express terms of the contract*, it was to be *void* " in case the lumber," *contracted for*, "*from any cause* should not arrive?"

SHEPLEY, C. J. — The suit is upon a sealed instrument. It is a commercial contract made, while the parties were ignorant of the exact condition of the property, and providing for a sale and purchase of part of a cargo of lumber shipped on a hazardous adventure from Gardiner to California.

The rights of the parties may depend upon its correct con-

struction. The circumstances, under which it was made, as disclosed by the testimony, may be considered in connection with it to ascertain the intention. The vessel had been upon her voyage about five months.

The principal objections to a recovery by the plaintiff, made in a very elaborate argument for the defendant, will be examined : —

1. The first is, that the contract contains a warranty, that the plaintiff, at the time of its inception, was the owner of one eighth part of the cargo of boards shipped at Gardiner.

The intention of the parties is to be ascertained from an examination of the whole contract, and if one part, upon a literal construction, be found at variance with another part, the part, which contributes more essentially to the contract and becomes the more material, will be entitled to more consideration, than that, which is less so. The clause, which recites the proportion of cargo owned by the plaintiff, will be of less importance, if a sale of it was not made, while a sale of a part of it, as yet unascertained, was made.

By an examination of the contract it becomes quite apparent, that the intention was to purchase and sell such portion only of the cargo of lumber owned by the plaintiff, as should arrive in California. And that there was no intention to make the plaintiff warrant, that any particular portion, or that any portion, of it should arrive there.

While the contract recites in the present tense, that the plaintiff " is owner of one eighth part of the cargo," it also says " now supposed to be on the way between Monte Video and California." A small part of the cargo of lumber had before been sold at Monte Video in the month of October, 1849. A construction, which would make the plaintiff warrant, that no part of it had been used in the vessel or sold, would be almost as much at variance with its general tenor and spirit, as a construction would be, that no part of it should be lost by the perils of the sea.

The real intention appears to have been to state, what part the plaintiff then owned, if no occurrence had happened to

deprive him of it.   This is discoverable from the use of the phrase " now supposed to be on the way," and from the sale of all the plaintiff's " right, title and interest in the said boards," and not of one eighth part of them.

Upon this construction of the contract there will be no foundation for another objection, that the lumber sold never did arrive in California.

2. Another objection is, that the agreement is imperfect and cannot be enforced without extraneous aid; and that has not been and cannot be obtained or shown.

The particular defect pointed out is, that no port or place in California is named, where that part of the cargo sold should be discharged or delivered.

If it should in such case appear, that the vessel had been cleared for a particular port in that State, or that the master had signed bills of lading to deliver the cargo at a port named; or that he had been instructed to proceed to a certain port to unlade, and that this was known to the parties, these facts might be considered in connection with the contract to ascertain their intention.   In the absence of all such proof it might be a fair conclusion, that the part sold was intended to be delivered at the port of general discharge of the cargo in that country.   In this case such an inference is more clearly authorized from the language used in the contract providing for payment within a certain time after " the arrival of the lumber at California, at the port of discharge," without naming any particular port.

3. Another objection is, that the plaintiff has never performed on his part by delivering according to the contract that part of the cargo sold by him to the defendant.

The language of the contract having reference to this matter is, " the said Smith is to deliver the said lumber alongside at a reasonable time after its arrival.   The said Davenport has the privilege of appointing an agent to receive and sell the said lumber and is to pay all expenses incident thereto."

From the facts proved in the case and exhibited by the

contract it becomes apparent, that neither party was expected to be personally present to deliver or to receive the lumber. The cargo appears to have been consigned to the master for sale. He thereby became the agent of the persons interested in it. The defendant was under no obligation to appoint an agent to receive the lumber. He merely secured to himself the privilege of appointing one to take delivery of it and sell it. If he did not elect to appoint one, he must at the time of making the contract have understood, that some person was to receive and sell it for him.

Both parties understanding the probable position of the vessel on her voyage; the difficulty, if not the impossibility that would prevent their being personally present; the uncertainty, whether any communication could be made by post before the arrival of the vessel, while their contract provided for a delivery by some one to some one without any further acts performed by them, unless the defendant should elect to appoint an agent, must have contemplated, that the agency of the master and consignee would be continued. That he would be the agent for each party to perform the duty for each required by the contract. The same person might be agent for the seller to deliver and for the purchaser to receive. When thus agent for both parties he would be considered as acting for each in the performance of the duties required of each. While making a discharge of the cargo alongside he would be acting for the plaintiff. While there receiving it himself or by those employed to assist him he would be acting for the defendant.

The only rational conclusion is, that the parties intended, that he should be their agent to perform all their duties there, unless the defendant should elect to appoint one. There is no proof of such an election; and when the master as consignee took charge of the lumber as delivered from the vessel he must be considered as having done it for the defendant. The fact, that he had not been informed of the sale or change of ownership, and that he had thereby become the agent of another person can make no difference in this case. It is

not unusual, that a master of a vessel or a consignee of a cargo becomes without his knowledge agent for new owners by virtue of his character as master or consignee. His agency in such cases arises out of his being the agent for all persons interested. While the property is in his custody as agent the owners of it may be changed many times.

No severance of the eighth part from the other part of the lumber could have been contemplated without the appointment of an agent by the defendant or any communication made to the master, that there had been a. change of ownership. There is no difficulty or inconsistency in coming to a conclusion, that the intention of the parties as well as their duties were and would have been different, if the defendant had elected to do it and had appointed an agent to receive and sell his lumber.

The intention appears to have been to permit the master and consignee to continue to act as the agent of all parties and to do the duties incumbent upon each, unless the defendant should appoint his own agent, and in such case to have him take the delivery of the share purchased as separated from the remainder and dispose of it according to his own instructions.

The only delivery contemplated by the parties, unless the defendant should appoint an agent to receive it, having taken place, the plaintiff must be considered with respect to a delivery as having performed the contract on his part.

4. A further objection is made, that the arrival and delivery of the lumber had not been ascertained before the suit was commenced.

The provision of the contract is, that the defendant " is to give his note in payment of said lumber as soon as its arrival and delivery can be ascertained."

The parties must have expected, that these facts would be ascertained in the usual course of mercantile business.

It would become the duty of the master and consignee to communicate to his known principals, what he had done for them. His letter bearing date on May 29, 1850, addressed

to the plaintiff and communicating the facts of the arrival and disposition of the lumber was placed in the hands of the defendant several weeks before the commencement of the suit.

The day of its arrival was not stated. The obligation to give a note was not made to depend upon the ascertainment of the day or time but upon the fact of its arrival. It might have been given on the ascertainment of the fact of its arrival and delivery, payable in six months from the date or time of the arrival of the lumber at California, leaving the time of payment to be subsequently ascertained. Although the defendant was informed on July 16, 1850, of the day, when the plaintiff alleged, that it had arrived, that did not prove, that it had arrived on that day. The contract did not impose upon the plaintiff the duty to ascertain and make known to the defendant the date of its arrival. The suit was not commenced, until many months had elapsed after the defendant had been informed of the day of its alleged arrival.

The defendant must be held liable to pay according to the terms of his contract for so much of the cargo of lumber as the plaintiff owned and caused to be delivered from the vessel in California.                *Defendant defaulted.*

TENNEY, HOWARD, RICE and APPLETON, J. J., concurred.